FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 2 7 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
:
GARY WHITE,                                                          :
                                                                     :        09-CV-744 (ARR)
                        Petitioner,                                  :
                                                                     :        NOT FOR ELECTRONIC
        -against-                                                    :        OR PRINT PUBLICATION
                                                                     :
JOSEPH F. BELLNIER, Superintendent of the Upstate                    :        ORDER & OPINION
Correctional Facility                                                :
                                                                     :
                        Respondent.                                  :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

        On June 30, 2009, Gary White ("petitioner"), appearing pro se, filed a petition for a writ

of habeas corpus challenging his criminal conviction pursuant to 28 U.S.C. § 2254.  In his

petition, he claims (1) that the state trial court erred in not suppressing custodial statements he

made to the police and (2) that he was deprived of the effective assistance of trial and appellate

counsel.  For the reasons stated below, his petition is denied.

**BACKGROUND**

        Petitioner challenges his July 23, 2003 conviction in the Supreme Court of the State of

New York, Kings County, of Murder in the Second Degree.  Following a jury trial, petitioner

was found guilty of murdering Albert Hansen, who died after being twice shot in the head on

June 1, 2002, in Brooklyn, New York.  People v. White, 10 N.Y.3d 286, 288-90 (2008).[1]

Petitioner first became a suspect in Hansen's murder when, on June 9, 2002, at approximately

---

[1] In reviewing an application for a writ of habeas corpus, the court must presume that a state court's determination of
a factual issue is correct, and the petitioner carries the burden of overcoming that presumption by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1); see Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003).  As
petitioner does not challenge the New York Court of Appeals' presentation of the facts and the court finds that they
are consistent with the record, the court adopts and borrows from the factual summary contained in that Court of
Appeals' opinion.

1

2:00 a.m., a police officer arrested petitioner in response to an unrelated domestic violence complaint by petitioner's girlfriend and petitioner's girlfriend advised the officer that petitioner was involved in the shooting. Id. at 288. Later that day, the arresting officer informed detective Frank Byrne—who had been assigned, with detective Robert Sommer, to investigate the shooting—that petitioner's girlfriend had implicated petitioner in that crime. Id. Byrne confirmed the allegation with petitioner's girlfriend, who stated that petitioner, if asked about the shooting, would offer a visit to a friend's home as an alibi. Id. at 288, 289 n.*. The detectives then tracked down the witness to the shooting to conduct a line-up, and the investigation proceeded as follows:

> [A]t approximately 7:30 P.M., after spending over 17 hours in a holding cell (much of it sleeping) [petitioner] was placed in a lineup. The only witness to the shooting . . . was unable to identify [petitioner] from the lineup. At approximately 9:30 P.M., [petitioner] was brought to an office for questioning by the detectives. Once there, [petitioner] inquired why he had been placed into a lineup. In response, Sommer produced a computer generated arrest photograph of the victim. [Petitioner] responded, "What about him?" Byrne stated "he was killed, and he was either killed in cold blood, or there was a reason for it." [Petitioner] was then asked whether he would "like to tell his side of the story," and he responded, "I'll tell you everything. Get me Newports and a Pepsi." This initial exchange took approximately five minutes without any Miranda warnings.
>
> Byrne then left the office to procure the requested items while Sommer remained with [petitioner], engaging in small talk. Byrne returned 15 to 20 minutes later and allowed [petitioner] to drink his soda and smoke a cigarette. At approximately 10:00 P.M., Byrne read [petitioner] his Miranda rights from a card. [Petitioner] acknowledged that he understood his rights and signed and dated the card. [Petitioner] also indicated his willingness to speak with the detectives.
>
> . . . . [Petitioner] told the detectives that, on [the date of the shooting], he was in Queens visiting a friend from 7:30 P.M. until the next morning. The detectives explained to [petitioner] that they knew his alibi was fabricated and that he should tell the truth. In response, [petitioner] rolled up his sleeves and showed the detectives large scars on both arms. [Petitioner] stated that Hansen caused the injuries during a mugging, allegedly committed 16 or 17 years earlier. He further indicated that on the day of the shooting, Hansen had again robbed and threatened to kill him. When he saw Hansen walking . . . with another person later that day, he ran up to them, pushed the other person aside, and shot Hansen twice.

> At the detective's request, [petitioner] provided a written statement but omitted the shooting. When confronted by the detectives regarding the omission, [petitioner] prepared a second handwritten statement in which he admitted to shooting the victim. After [petitioner] completed his written accounts of the shooting, he was provided with a meal, consumed it and then felt ill, but did not request medical treatment.[2] [Petitioner] agreed to give a videotaped confession and at approximately 1:30 A.M., on June 10, 2002, an assistant district attorney again advised [petitioner] of his Miranda rights, this time on videotape. At the conclusion of the Miranda warnings, [petitioner] for the first time requested counsel, at which time the videotaping ceased.

Id. at 288-89. Petitioner was intoxicated at the time of his arrest, but the detectives who

interrogated him testified that he appeared normal when the lineup was conducted and at the time

he was questioned. Resp't's Ex. I, pt. 5 at 305-08, 578.

Prior to trial, petitioner sought to have his statements to police suppressed under the

theory that his pre-Miranda exchange with police constituted an interrogation and that, because

there was no attenuation between this initial interrogation and the post-Miranda questioning, all

the statements that petitioner made were obtained in violation of his state and federal

constitutional rights. White, 10 N.Y.3d at 289. The trial court initially ruled in favor of

petitioner and excluded petitioner's confessions. However, upon the State's motion to renew and

reargue, the court ruled that only petitioner's pre-Miranda statements were inadmissible and that

his post-Miranda written and oral statements could be admitted at trial. Id. at 290; Resp't's Ex.

D at A15. Observing that the videotaped statement in which petitioner invoked his right to

counsel was not offered by the prosecution, the court stated that that statement would not be

admitted at trial. Resp't's Ex. D at A15.

The case then proceeded to trial. Petitioner's first trial began on July 8, 2003, and

resulted in a mistrial due to jury deadlock. Aff. of Camille O'Hara Gillespie ("Gillespie Aff.")

¶ 8. At the close of a second trial, which began a week later, the jury delivered a guilty verdict,

---

[2] Petitioner vomited after eating. Resp't's Ex. I, pt. 5 at 385.

convicting petitioner of Murder in the Second Degree pursuant to New York Penal Law § 125.25[1].  Id. ¶ 10.  At that trial, notwithstanding the judge's prior suppression ruling, detectives Byrne and Sommers testified about the content of their pre-Miranda questioning of petitioner. Resp't's Ex. I, pt. 5 at 310-14.  Also, the videotape showing petitioner's invoking his right to counsel was admitted after defense counsel cross-examined Byrne and Sommers on its content. Resp't's Ex. I, pt. 5 at 385-88, 415-46, 629.

Following his conviction, petitioner moved orally for the verdict to be set aside based on, inter alia, the prosecution's reference to petitioner's girlfriend in his opening statements. Resp't's Ex. I, pt. 6 at 2-4.  Petitioner's girlfriend was not called as a witness, and petitioner argued that the prosecution's early reference to the girlfriend led defense to cross-examine the witnesses differently than it would have had she not been mentioned.[3]  Id.  The prosecution responded that it had tried to locate the girlfriend to testify, and it disavowed having opened the door to discussing her.  In this regard, the prosecution noted that defense counsel had referred to the girlfriend during jury selection and opening statements and had characterized her as a scorned woman who had been abused emotionally and physically.  Id. at 5-6.  The trial court denied petitioner's motion and sentenced petitioner to a prison term of twenty-two years to life. Id. at 6, 15.  Petitioner thereafter appealed.

On direct appeal before the New York Supreme Court, Appellate Division, Second Judicial Department ("Appellate Division"), Petitioner argued that the trial court's failure to suppress his post-Miranda statements violated his federal and state constitutional rights because they were purportedly part of a continuous interrogation not interrupted prior to petitioner's Miranda waiver.  Gillespie Aff. ¶ 11.  On May 1, 2007, the Appellate Division affirmed petitioner's judgment of conviction.  People v. White, 836 N.Y.S.2d 204 (App. Div. 2d Dep't

---

[3] Defense counsel appears to have been referring to questions regarding petitioner's alleged abuse of his girlfriend.

4

2007). Petitioner was granted leave to appeal to the New York Court of Appeals, which affirmed the order of the Appellate Division on March 20, 2008. White, 10 N.Y.3d 286. Noting that petitioner "made no statement that was either inculpatory or related to the shooting until after . . . he had properly waived his Miranda rights," the Court of Appeals held that the break between the initial custodial interrogations the subsequent admission "was sufficiently pronounced to dissipate the taint of the Miranda violation" and that petitioner's post-Miranda statements were admissible. Id. at 292. Basing its analysis primarily on New York law, it stated that the police should have administered Miranda warnings initially but that "after the very brief pre-Miranda questioning '[petitioner] may be said to have returned, in effect, to the status of one who is not under the influence of questioning.'" Id. at 292 (quoting People v. Chapple, 38 N.Y.2d 112, 115 (1975)). The Court of Appeals also observed that, after receiving Miranda warnings, petitioner first provided an exculpatory statement and alibi and confessed only after being confronted with the untruthfulness of the statement. Id.

Following his unsuccessful appeals in state court, petitioner sought a writ of certiorari in the United States Supreme Court, predicated on the claim that his federal constitutional rights to counsel and due process were violated because the police had not given Miranda warnings before any questioning began and that Oregon v. Elstad, 470 U.S. 298 (1985), did not justify the state court's failure to suppress his post-Miranda statements to the police. Gillespie Aff. ¶ 19. On October 6, 2008, the Supreme Court denied the petition, at which point petitioner's conviction became final. White v. New York, 129 S. Ct. 221 (Oct. 6, 2008).

Petitioner thereafter timely filed the instant action, alleging (1) that the state court erred in not suppressing petitioner's custodial statements and (2) that he was deprived of the effective assistance of trial and appellate counsel. At the time of filing, petitioner conceded that he had

5

not exhausted his ineffective assistance of counsel claims and asked the court to stay his petition and hold it in abeyance to allow him to pursue, in state court, a motion to vacate his judgment of conviction, pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, and a Writ of Error Coram Nobis. Pet. at ¶ 22, B. The court directed petitioner to show good cause for why he failed to exhaust his ineffective assistance of counsel claims prior to filing his habeas petition and directed petitioner to address the merits of the claims, so that the court could determine whether a stay was warranted. Dkt. No. 6. Based on a review of petitioner's submissions in response to that order, the court declined to grant a stay. Instead, in an order dated January 26, 2011, the court ordered respondent to address the merits of petitioner's ineffective assistance of counsel claims. Dkt. No. 9. The court observed that, when faced with a "mixed petition," it may (i) dismiss the petition; (ii) stay the petition and hold it in abeyance while petitioner returns to state court to exhaust his previously unexhausted claims; or (3) deny the petition on the merits pursuant to 28 U.S.C. § 2254(b)(2), notwithstanding the failure of petitioner to exhaust his state court remedies. Id. (quoting Rhines v. Webber, 544 U.S. 269, 277 (2005)).

Petitioner's ineffective assistance of counsel claims have now been exhausted. On October 8, 2009, petitioner moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to C.P.L. § 440.10, claiming ineffective assistance of trial counsel on the following grounds: (1) trial counsel failed to challenge petitioner's initial and subsequent arrest for lacking probable cause and the derived statements as being the "fruit of the poisonous tree;" (2) trial counsel failed to make a motion in limine to preclude and/or object to the introduction of hearsay evidence; (3) trial counsel failed to conduct pretrial investigations and to produce material exculpatory witnesses; (4) trial counsel conducted cross-examination of prosecution witnesses prejudicially; and (5) trial counsel failed to object at trial to the

introduction of petitioner's videotaped statement invoking his right to counsel. Gillespie Aff.

¶ 19. By order dated March 8, 2010, the New York Supreme Court, Kings County, denied

petitioner's motion to vacate judgment, People v. White, Ind. No. 3850/2002, 2010 NY Slip Op

31195U (Sup. Ct. Kings Ctny. March. 9, 2010), a decision that petitioner was denied leave to

appeal. Supp. Aff. of Camille O'Hara Gillespie ¶¶ 13, 29. Petitioner thereafter moved for a Writ

of Error Coram Nobis, alleging that appellate counsel had been ineffective for failing to argue,

on direct appeal, that trial counsel was ineffective for the reasons alleged in petitioner's C.P.L.

§ 440.10 motion. Id. ¶ 32. On November 9, 2010, the Appellate Division denied petitioner's

motion, People v. White, 910 N.Y.S.2d 366 (App. Div. 2d Dep't 2010), and petitioner's

application for leave to file an appeal from that order and decision was denied on June 30, 2011,

see Dkt. No. 14.

## DISCUSSION

### I.    Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a

deferential standard that federal habeas courts must apply when reviewing state court

convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

Id. Here, petitioner does not argue that the adjudication of his claims "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," so at issue is only whether the state court's decision resulted in a decision involving an unreasonable application of clearly established Federal law. Id.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

## II.   Petitioner's Suppression Claim

The Miranda exclusionary rule safeguards a defendant's Fifth Amendment right against self-incrimination by barring the use, as evidence against a defendant, of any statements he makes during an unwarned, in-custody interrogation by police. Miranda v. Ariz., 384 U.S. 436, 478-479 (1966); see Elstad, 470 U.S. at 306-07. "The purpose of the Miranda warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." United States v. Carter, 489 F.3d 528, 534 (2d Cir. 2007). Therefore, although any

8

initial unwarned statements must be suppressed, statements made subsequently, after a valid Miranda waiver, may be admitted so long as they are knowing and voluntary. See Elstad, 470 U.S. at 317-18 ("[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings."). However, in an exception to Elstad, a law enforcement official may not follow a practice of interrogation whereby the official intentionally withholds warnings until a confession is elicited and then uses the confession to coerce inculpatory post-warning statements. Missouri v. Seibert, 542 U.S. 600, 613 (2004); Carter, 489 F.3d at 537.

Petitioner claims that he is being held unlawfully because it was a violation of his federal constitutional rights to admit, as evidence at trial, in-custody statements he made to police. Specifically, he argues that both his pre-Miranda and post-Miranda statements to police should have been suppressed because "they were part of a continuous interrogation not interrupted by any meaningful break prior to [petitioner's] purported waiver of his constitutional rights." Am. Pet. at ¶ 22A. Because the state court's determination that petitioner's statements should not be suppressed was well within the bounds of Supreme Court jurisprudence, 28 U.S.C. § 2254(d), habeas relief is not available to petitioner on this ground.

Petitioner's claim that he is entitled to habeas relief because his pre-Miranda statement was improperly admitted is unavailing.[4] The only statement made by petitioner prior to the administration of Miranda warnings was an avowal that he would tell the police everything if they brought him a Pepsi and cigarettes. The Court of Appeals properly observed, in the course of its analysis, that this statement was not inculpatory. White, 10 N.Y.3d at 292. Under the law

---

[4] This claim is unexhausted, as petitioner did not appeal the admission of his pre-Miranda statement to the Court of Appeals, see Resp't's Ex. D, but the court nonetheless may review this claim and dismiss it on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

of this circuit, "[a]greeing to tell the truth, without more, is not an inculpatory or self-incriminating statement." Nova v. Barlett, 211 F.3d 705 (2d Cir. 2000). Similarly, merely agreeing to tell the police "everything" does not implicate oneself in criminal activity. Because it was not inculpatory, the admission of this pre-warned statement, though erroneous, was harmless, and habeas relief is not available. See id. at 709 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)).

Nor is habeas relief warranted based on the admission of petitioner's post-Miranda statements, as the state court's determination that they were admissible was not an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d). In its opinion, the Court of Appeals did not give a reasoned explanation of its rejection of petitioner's federal constitutional challenge, but it is clear from a review of the record that there was a reasonable basis on which it could deny relief. See Harrington, 131 S. Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Because petitioner made no incriminating statements prior to his Miranda waiver and "there was almost no overlap between [his pre-Miranda] statement and the full confession he gave after he received the warnings," there is no basis for finding that the post-warning questioning was a continuation of the pre-warning questioning. See Carter, 489 F.3d at 536 (discussing and distinguishing Seibert, 542 U.S. 600). Moreover, the circumstances surrounding petitioner's post-Miranda confession and the entire course of police conduct support a conclusion that petitioner's incriminating statements were voluntarily made and that their admission was proper. See Elstad, 470 U.S. at 318.

The Supreme Court has made clear that the admissibility of a suspect's post-Miranda confession, when made following unwarned but non-coercive police questioning, turns on the

10

knowing and voluntary nature of the suspect's post-<u>Miranda</u> statements:

> It is an unwarranted extension of <u>Miranda</u> to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.  Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

<u>Elstad</u>, 470 U.S. at 309; <u>see</u> <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 244 (2d Cir. 1998).  The

record here does not compel a finding that the police's pre-<u>Miranda</u> questioning was

accompanied by circumstances so calculated to undermine petitioner's ability to exercise his free

will that suppression of petitioner's post-<u>Miranda</u> statements was required.  The detectives' pre-

<u>Miranda</u> questioning lasted five minutes and elicited no inculpatory statements.  Although

petitioner was arrested while intoxicated and was held for seventeen hours before being

questioned, evidence was adduced at trial that petitioner slept and his personal needs were

attended to during this period of detention.  The record lacks any evidence of actual coercion.

The conditions surrounding petitioner's <u>Miranda</u> waiver also support a finding that the

waiver was knowing and voluntary.  Between petitioner's pre-<u>Miranda</u> statement and his waiver

of rights, approximately fifteen to twenty minutes of time passed, during which petitioner was

provided, as per his request, with a drink and cigarettes.  At the time that the petitioner signed the

<u>Miranda</u> waiver, there is no indication that petitioner was intoxicated or otherwise impaired in a

manner that would preclude him from understanding and exercising his rights.  See <u>Takleff</u>, 135

F.3d at 245 ("Furthermore, and crucially important, there is no indication in the record that

[petitioner] did not understand his rights once he was given the warnings or that his subsequent

waiver of those rights was anything but knowing and voluntary.").  As in <u>Elstad</u>, "[t]hough

belated, the reading of [petitioner]'s rights was undeniably complete."  470 U.S. at 314.  That

11

petitioner then chose to waive his rights and speak "is, of course, highly probabative." Id. at 318. Indeed, after petitioner signed a Miranda waiver and the police resumed questioning, petitioner provided police with a fake alibi and disavowed any involvement with or knowledge of the shooting. Based on the totality of these circumstances, see id., the state court's determination that petitioner's Miranda statements were admissible was a reasonable application of Federal law, as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Accordingly, habeas relief is denied on this ground.

**III.    Petitioner's Ineffective Assistance of Counsel Claims**

A petitioner seeking a writ of habeas corpus on ineffective assistance of counsel grounds faces a heavy burden in establishing entitlement to relief. Strickland v. Washington, 466 U.S. 668 (1984), established the two-prong test by which ineffective assistance of counsel claims are adjudicated. See Harrington, 131 S. Ct. at 780. Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland test if a there is an insufficient showing on one. See Id. at 697. In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In so doing, it must "affirmatively entertain the range of possible reasons [petitioner]'s counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted).

Moreover, when Strickland claims are presented on collateral habeas review, the court

assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. Knowles v. Mirzayance, 556 U.S. 111 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam)); see 28 U.S.C. § 2254(d). In order to prevail on an ineffective assistance of counsel claim on habeas review, a petitioner must show not only that counsel's performance fell below the Strickland standard but also that the state court's adjudication of the Strickland standard was itself unreasonable. See Harrington, 131 S. Ct. at 785. Stated differently, the court may afford habeas relief only upon a finding that the state court was unreasonable—and not merely incorrect—in concluding that counsel's performance did not fall below an objective standard of reasonableness or, if it did, that petitioner was not prejudiced as a result. See id.

Petitioner argues that his trial and appellate counsel's performance fell below constitutional standards in five respects. Namely, petitioner contends that trial counsel failed to:

> (1) challenge [petitioner]'s arrest as lacking probable cause, and [petitioner]'s subsequent statement as fruit of the poisonous tree; (2) object to the admission of hearsay testimony at trial; (3) conduct a pre-trial investigation and to call as witnesses Denise Scott and Robin Halloway; (4) properly cross-examine the People's witnesses, and; (5) object to the playing of [petitioner]'s video-taped statement invoking his right to counsel.

Am. Pet. at ¶ 22B. He contends that appellate counsel's assistance was also ineffective because appellate counsel did not raise these ineffective assistance arguments on direct appeal. Petitioner's ineffective assistance of counsel claims have now been exhausted and, for the reasons stated below, the court finds that they have no merit and that habeas relief is not warranted.

### (1) Failure to Challenge Petitioner's Arrest as Lacking Probable Cause

Petitioner contends that his counsel should have challenged his initial arrest as lacking in probable cause and sought to have petitioner's subsequent confession suppressed as fruit of the

poisonous tree. Probable cause to arrest exists where the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000) (citations and internal quotation marks omitted). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 70 (2d Cir. 2001). In rejecting petitioner's claim that his counsel was ineffective for failing to challenge his arrest as lacking in probable cause, the state court determined that petitioner's arrest was justified by a legitimate report of domestic assault. Therefore, the court reasoned, "counsel had no viable basis to challenge whether police had probable cause to effectuate that arrest and thus could not legitimately challenge his subsequent statement pursuant to the fruit of the poisonous tree doctrine." <u>White</u>, 2010 NY Slip Op 31195U at *4. This conclusion was not unreasonable.

Petitioner seeks to cast doubt on the probable cause supporting his arrest by downplaying the nature of the dispute between him and his girlfriend and pointing out that he was never tried or convicted for the assault. See Resp't's Ex. H, Notion of Motion to Vacate Judgment, at 18 ("[Petitioner]'s own independent recollection of the incident involving himself and [his girlfriend] on June 9th, 2002, was that a 'verbal dispute' had occurred."). However, petitioner does not dispute that his girlfriend made a complaint of domestic assault, and his supposed recollection of the dispute sheds no light on circumstances that may have raised doubt as to his girlfriend's veracity at the time. <u>See Curley</u>, 268 F.3d at 70. Because petitioner does not show that there was any viable ground for challenging his arrest, counsel was not deficient in failing to bring a motion doing so. <u>See Knowles</u>, 556 U.S. 111 (holding that counsel was not ineffective

14

where he did not pursue a claim that he reasonably believed was doomed to fail). Moreover, because there is no "reasonable probability" that, but for counsel's purported error in failing to challenge petitioner's arrest, the result of the proceeding would have been different, petitioner also fails to establish any prejudice under Strickland. See id.

### (2) Failure to Object to the Admission of Hearsay at Trial

Petitioner next argues that his trial counsel was ineffective because he failed to object to hearsay testimony at trial. Although petitioner does not identify the particular hearsay statements he finds objectionable in his habeas petition, in his state-court motion to vacate judgment, petitioner faulted counsel for eliciting and failing to object to testimony indicating that petitioner had assaulted his girlfriend and that petitioner's girlfriend had implicated him in the shooting.

A review of the record demonstrates that counsel's purported elicitation of hearsay testimony regarding the assault was consistent with counsel's trial strategy for dealing with this problematic information and with the anticipated testimony of petitioner's girlfriend. That petitioner's girlfriend did not ultimately testify because she could not be located does not, in hindsight, render counsel's strategy unreasonable. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" (quoting Strickland, 466 U.S. at 690)). Counsel's strategy was to suggest that the girlfriend had accused petitioner of the shooting because she was a scorned woman retaliating for petitioner's mistreatment of her. In light of this strategy, the state court cannot be said to have unreasonably applied Strickland in determining that trial counsel's failure to object to inadmissible hearsay that was pertinent to the girlfriend's motivations for accusing petitioner did not amount to ineffective assistance of

counsel. See Singleton v. Davis, 308 Fed. Appx. 560, 562 (2d Cir. 2009) (denying habeas relief where defense counsel elicited hearsay and did not object to its introduction where doing so was strategic though potentially risky). Moreover, in light of the significant evidence of petitioner's guilt, petitioner has not established that the admission of hearsay was prejudicial.

### (3)  **Failure to Conduct a Pre-Trial Investigation and Call Witnesses**

Petitioner argues that his trial counsel was also ineffective because he failed to conduct a pre-trial investigation and to call, as witnesses, Denise Scott and Robin Halloway. Counsel's decisions regarding investigation and witness presentation are afforded a "strong presumption" that they fell within the "wide range" of reasonable professional assistance. Strickland, 466 U.S. at 689. Counsel may "make a reasonable decision that makes particular investigations unnecessary," id. At 691, and "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense," Harrington, 131 S. Ct. at 789-90. A court reviewing a Strickland claim is "especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury" such decisions are "typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (citation and internal quotation marks omitted). Particularly given the discretion afforded to counsel in making strategic decisions, the state court correctly determined that petitioner's challenge to counsel's investigatory and witness-related choices is without merit.

The Supreme Court has advised that "[t]o support a defense argument that the prosecution has not proved its case[,] it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." Harrington, 131 S. Ct. at 790. A review of the record shows that petitioner's counsel reasonably employed such a strategy, which sought to undermine the jury's confidence in the police investigation and portray the petitioner's

16

confession as the result of police coercion.  See, e.g., Resp't's Ex. I, pt. 5 at 181-84 (stating that

the detectives "didn't do what they were supposed to do in this case" and describing their attitude

towards the investigation as "cavalier" in defense's opening statements).  At trial, consistent with

this strategy, counsel cross-examined the police about whether they received tips from Scott and

Halloway on possible suspects whom the police did not pursue.  See Resp't's Ex. I, pt. 5 at 336-

40, 600-01.  Petitioner does not explain what exculpatory information counsel would have

discovered had he conducted a more thorough pre-trial investigation.  Nor does he provide any

indication, by affidavit or otherwise, of what Scott or Halloway would have said at trial, and

whether their testimony would have provided information beyond that brought out during

counsel's cross-examination of police.  As such, there is no basis for concluding that counsel's

performance fell below "an objective standard of reasonableness" or that there is a "reasonable

probability" that, had counsel taken the course of action suggested by petitioner, "the result of

the proceeding would have been different."  Strickland v. Washington, 466 U.S. at 688, 98.

### (4)    **Failure to Cross-Examine the Prosecution's Witnesses Properly**

Petitioner further claims that his counsel's performance was ineffective because he did

not properly cross-examine the prosecution's witnesses.  As the state court found:

> Faced with the compelling evidence of [petitioner]'s own admission of guilt,
> counsel wisely chose to employ a strategy of undermining the credibility of the
> detectives who took the inculpatory statement and to argue to the jury that the
> statement either had never been made or was false.  The record indicates that
> counsel performed competent cross-examinations of the people's witnesses in an
> attempt to impeach their credibility.  Such a legitimate strategy, though ultimately
> unsuccessful, does not rise to the level of ineffective assistance.

White, 2010 NY Slip Op 31195U at *6-7 (citations omitted).  Because the court finds not fault in

this assessment, habeas relief is not available on this ground.

17

**(5)    Failure to Object to Videotaped Statement Invoking Right to Counsel**

Petitioner's final argument, that his trial counsel was ineffective for failing to object to the introduction of the videotaped statement of petitioner invoking his right to counsel, is also unavailing.  As the state court noted, the videotaped recording contained no inculpatory evidence, so petitioner cannot show prejudice resulting from its introduction.  Moreover, the state court could have reasonably inferred from the record that counsel's failure to object was consistent with his strategy of suggesting that petitioner was under police coercion at the time he confessed.  Counsel cross-examined witnesses on the content of the videotape and, in his summation, referenced petitioner's behavior on the tape as evidence that petitioner's extended pre-interrogation detention had made petitioner "susceptible, like a puppet on strings" to police coercion.  See Resp't's Ex. I, pt. 5 at 665.  Because counsel made a reasonable strategic choice to exploit the content of the videotape, his assistance cannot be properly characterized as ineffective in this regard.

**(6)    Ineffective Assistance of Appellate Counsel**

Petitioner claims that his appellate counsel also was ineffective because he did not raise, on direct review, the ineffective assistance of trial counsel claims that petitioner brought collaterally.  As discussed above, these claims have little to no merit.  It was therefore not unreasonable for the state court to conclude that petitioner's appellate counsel was not ineffective in deciding not to raise the claims on direct appeal.

**CONCLUSION**

The petition for a writ of habeas corpus is denied.  Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court

18

declines to issue a certificate of appealability.  In addition, this court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-445 (1962).  The Clerk of Court is directed to enter judgment accordingly. SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated:          December 23, 2011
                Brooklyn, New York

SERVICE LIST:

**Plaintiff:**

Gary White
# 03-A-5098
Upstate Correctional Facility
309 Bare Hill Road
P.O. Box 2001
Malone, NY 12953